



**IN THE UNITED STATES DISTRCT COURT
EASTERN DISTRICT OF VIRGINIA**

COMPLAINT UNDER CIVIL RIGHTS ACT 42 U.S.C. § 1983

Action Number ___3:10 cv873___
(To be supplied by the Clerk
U.S. District Court)

Please fill out this complaint form completely. The court needs the information requested in order to assure that your complaint is processed as quickly as possible and that all your claims are addressed. Please print/write legibly of type.

## I.   PARTIES

A.   Plaintiff:
    1.    (a). **Deena Kaye Myers** (b).#325296 / 1128012
            (Name)               (Inmate number)
          (c). Deerfield Correctional Center
            (Address)
            21360 Deerfield Drive
            Capron, VA 23829

Plaintiff MUST keep the Clerk of Court notified of any change of address due to transfer or release. If plaintiff fails to keep the /clerk informed of such change, this action may be dismissed.

B.   Defendant (s):

    Plaintiff is advised that only persons acting under color of state law are proper defendants under section 1983. The Commonwealth of Virginia is immune under the Eleventh Amendment. Private parties such as attorneys and other inmates may not be sued under section 1983. In addition, liabilities under section 1983 requires personal action by the defendant that caused you harm. Normally, the Director of the Department of Corrections, wardens and sheriffs are not liable under section 1983 just because they supervise persons who may have violated your rights. These persons are liable only if the were personally involved in the alleged deprivation.

    1.  **Mr. Keith Davis** - Warden
        Deerfield Correctional Center
        21360 Deerfield Drive, Capron, Va. 23829

    2.  **Mr. Clyde Alderman** - Assistant Warden
        Deerfield Correctional Center
        21360 Deerfield Drive, Capron, Va. 23829

    3.  **Major Jerry Streat** - Chief of Security
        Deerfield Correctional Center
        21360 Deerfield Drive, Capron, Va. 23829



1

4. **Ms. B.M. Grant** - Treatment Program Supervisor (TPS)
   Deerfield Correctional Center
   21360 Deerfield Drive, Capron, Va. 23829

5. **Lt. K. G. Walker** - Unit Manager - Assisted Living Unit
   Deerfield Correctional Center
   21360 Deerfield Drive, Capron, Va. 23829

6. **Lt. Ridley** - Watch Commander
   Deerfield Correctional Center
   21360 Deerfield Drive, Capron, Va. 23829

7. **Lt. Goodfellow** - Watch Commander
   Deerfield Correctional Center
   21360 Deerfield Drive, Capron, Va. 23829

8. **Nurse Bonita Badgett** - Head Institutional Nurse
   Deerfield Correctional Center
   21360 Deerfield Drive, Capron, Va. 23829

9. **Dr. Harvard Stephens** - Chief Physician
   Virginia Department of Corrections
   6900 Atmore Drive, Richmond, VA

10. **Mr. W. Robison** - Psychology Associate Sr.
    Deerfield Correctional Center
    21360 Deerfield Drive, Capron, Va. 23829

11. **Mr. C. S. Halloran, QMHP** - Psychology Associate
    Deerfield Correctional Center
    21360 Deerfield Drive, Capron, Va. 23829

12. **Ms. C. Smith** - Assisted Living Counselor
    Deerfield Correctional Center
    21360 Deerfield Drive, Capron, Va. 23829

13. **Sgt. K. Chalmers** - Institutional Investigator
    Deerfield Correctional Center
    21360 Deerfield Drive, Capron, Va. 23829

14. **Nurse R. Conner, RN,** - Assisted Living Head Nurse
    Deerfield Correctional Center
    21360 Deerfield Drive, Capron, Va. 23829

15. **Officer Romines** – Male correctional Officer involved in strip search and body cavity search of plaintiff and one of the "John Does" listed in the Statement of Case but exact date of his involvement presently unknown due to DOC official's refusal to provide documentation.
   Deerfield Correctional Center
   21360 Deerfield Drive, Capron, Va. 23829

16. **Officer Martin** - Male correctional Officer involved in strip search and body cavity search of plaintiff and one of the "John Does" listed in the Statement of Case but exact date of his involvement presently unknown due to DOC official's refusal to provide documentation
   Deerfield Correctional Center
   21360 Deerfield Drive, Capron, Va. 23829

17. **Sgt. Jones** - Male correctional Officer involved in strip search and body cavity search of plaintiff
   Deerfield Correctional Center
   21360 Deerfield Drive, Capron, Va. 23829

18. **Officer Seal** - Male correctional Officer involved in strip search and body cavity search of plaintiff and one of the "John Does" listed in the Statement of Case but exact date of his involvement presently unknown due to DOC official's refusal to provide documentation
   Deerfield Correctional Center
   21360 Deerfield Drive, Capron, Va. 23829

19. **Officer Jones** - Male correctional Officer involved in strip search and body cavity search of plaintiff and one of the "John Does" listed in the Statement of Case but exact date of his involvement presently unknown due to DOC official's refusal to provide documentation
   Deerfield Correctional Center
   21360 Deerfield Drive, Capron, Va. 23829

20. **Officer Beale** - Male correctional Officer involved in at least the strip search and body cavity search of the plaintiff on **October 13, 2010**
   Deerfield Correctional Center
   21360 Deerfield Drive, Capron, Va. 23829

21. **Officer Peoples** - Male correctional Officer involved in at least the strip search and body cavity search of the plaintiff on **October 13, 2010**
   Deerfield Correctional Center
   21360 Deerfield Drive, Capron, Va. 23829

22. **Officer Lowery** - Male correctional Officer involved in at least the strip search and body cavity search of the plaintiff on **October 13, 2010**
   Deerfield Correctional Center
   21360 Deerfield Drive, Capron, Va. 23829

23. **Lt. Artist** - Male correctional Officer involved in at least the strip search and body cavity search of the plaintiff on **October 13, 2010**
   Deerfield Correctional Center
   21360 Deerfield Drive, Capron, Va. 23829

24. **Mr. John Doe #1** - unknown male correctional officer at DFCC involved in strip search of plaintiff
   Deerfield Correctional Center
   21360 Deerfield Drive, Capron, VA 23829

25. **Mr. John Doe #2** - unknown male correctional officer at DFCC involved in strip search of plaintiff
   Deerfield Correctional Center
   21360 Deerfield Drive, Capron, VA 23829

26. **Mr. John Doe #3** - unknown male correctional officer at DFCC involved in strip search of plaintiff
   Deerfield Correctional Center
   21360 Deerfield Drive, Capron, VA 23829

27. **Mr. John Doe #4** - unknown male correctional officer at DFCC involved in strip search of plaintiff
   Deerfield Correctional Center
   21360 Deerfield Drive, Capron, VA 23829

28. **Mr. John Doe #5** - unknown male correctional officer at DFCC involved in strip search of plaintiff
   Deerfield Correctional Center
   21360 Deerfield Drive, Capron, VA 23829

29. **Mr. John Doe #6** - unknown male correctional officer at DFCC involved in strip search of plaintiff
   Deerfield Correctional Center
   21360 Deerfield Drive, Capron, VA 23829

30. **Mr. John Doe #7** - unknown male correctional officer at DFCC involved in strip search of plaintiff
   Deerfield Correctional Center
   21360 Deerfield Drive, Capron, VA 23829

31. **Mr. John Doe #8** - unknown male correctional officer at DFCC
involved in strip search of plaintiff
    Deerfield Correctional Center
    21360 Deerfield Drive, Capron, VA 23829

32. **Mr. John Doe #9** - unknown male correctional officer at DFCC
involved in strip search of plaintiff
    Deerfield Correctional Center
    21360 Deerfield Drive, Capron, VA 23829

33. **Mr. John Doe #10** - unknown male correctional officer at DFCC
involved in strip search of plaintiff
    Deerfield Correctional Center
    21360 Deerfield Drive, Capron, VA 23829

34. **Officer J. Sledge** - male correctional officer at DFCC
involved in documented instances of sexual harassment of the
plaintiff
    Deerfield Correctional Center
    21360 Deerfield Drive, Capron, VA 23829

35. **Mr. Gene Johnson** - Director
    Va. Dept. of Corrections
    6900 Atmore, Drive, Richmond, VA 23225

36. **Mr. John Jabe,** - Assistant Director
    Va. Dept. of Corrections
    6900 Atmore, Drive, Richmond, VA 23225

37. **Mr. Gary L. Bass** - Chief of Operations
    Va. Dept. of Corrections
    6900 Atmore, Drive, Richmond, VA 23225

38. **Mr. David B. Everett** - former warden - Deerfield Correctional
Currently warden at Sussex II State Prison,
    24427 Muslewhite Drive, Waverly, VA 23891-1111

Plaintiff MUST provide and address for defendant (s) in order for the court to serve the complaint. If plaintiff does not provide and address for a defendant, that person may be dismissed as a party to this action.

In addition, plaintiff MUST provide a copy of the completed complaint and any attachments for EACH defendant named.

## II.   PREVIOUS LAWSUITS

A.    Have you ever begun other lawsuits in any state or federal court relating to your imprisonment? Yes [    ]   No [X]

B.    If your answer to A is YES: You must describe any lawsuit, whether currently pending or closed, in the space below. [If there is more than one lawsuit, you must describe each lawsuit on another sheet of paper, using the same outline, and attach hereto.]

1.    Parties to previous lawsuit:
      Plaintiff (s) n/a

      Defendant(s)

2.    Court [if federal court, name the district; if state court, name the county]:

3.    Date lawsuit filed:

4.    Docket number:

5.    Name of Judge to whom case was assigned:

6.    Disposition [Was case dismissed? Appealed? Is it still pending? What relief was
      granted, if any?]:

## III   GRIEVANCE PROCEDURE

A. At what institution did the event concerning your current complaint take place?
   Deerfield Correctional Center in Capron, Va.

B. Does the institution listed in A have a grievance procedure?

   Yes [X]            No [    ]

C. If your answer to B is YES:

   1. Did you file a grievance based on this complaint? Yes [X]      No [    ]

   2. If so, where and when: June 10, 2010 at Deerfield Correctional
   Center

   3. What was the result? Denied by Assistant Warden Clyde Alderman
   on July 1, 2010

4. Did you appeal? Yes [X]   No [   ]

5. Result of appeal:   denied by Mr. Gary Bass, Chief of Operation for the Dept of Correction on July 13, 2010 --- attempted to appeal directly to Director Gene Johnson on 7/17/10 but that appeal was refused by G. Robinson, Manager Ombudsman Services Unit on August 4, 2010 thereby exhausting all administrative remedies.

D.   If there was no prison grievance procedure in the institution, did you complain to the prison authorities? Yes [N/A]       No [   ] .

If you answered Yes:  What steps did you take? N/A

E.   If your answer in NO, explain why you did not submit your complaint to the prison authorities. N/A

## IV.   STATEMENT OF THE CLAIM

[State here as briefly as possible the facts of your case. Describe how each defendant is involved and how you were harmed by their action. Also include the names of any other persons involved, dates and places of events. You may cite constitutional amendments you allege were violated, but do not give any legal arguments or cite any cases or statutes.

If you intend to allege several related claims, number and set forth each claim in a separate paragraph.

The plaintiff, Deena Kaye Myers, is a 28-year-old **female** born at the Danville Memorial Hospital in Danville, Virginia on December 24, 1981, as is attested to by the copy of the plaintiff's birth certificate that was issued by the Virginia Department of Health - Division of Vital Records on April 17, 2009. (State file number 145-81-076163). (See copy of birth certificate attached)

According to Dr. William G. Reiner, M.D. F.A.A.P, Director Psychosexual Development Clinic, The Children's Hospital of Oklahoma, the plaintiff was born with and/or has since developed a large number of medical issues and conditions including but not limited to:

1. Spina bifida (myelomeningocele) with partial paralysis of the lower extremities requiring the use of a wheelchair;

2. Complete urinary incontinence;

3. Colostomy (In a colostomy, surgeons remove all or part of the large intestine. An opening called a stoma is then made in

the abdomen, which allows the colon to empty waste into a specially designed plastic bag located outside of the body)

4. Ileostomy (An ileostomy is a similar operation in which the lower part of the small intestine is routed to the stoma)

5. **Feminized external genitalia** with no scrotum, no gonads, and no penis;

6. ventral hernia;

7. external rotation deformities, bilateral lower extremities;

8. L-4 level lipomeningocele;

9. Bilateral clubbed feet;

10. Dislocated hips;

11. screws and plates in both legs and both ankles;

12. screws in right femur due to incident with defective wheelchair issued by DOC;

13. Cyst on brain;

14. fatty tumor on back and stomach.

Myers arrived at Deerfield Correctional Center ("DFCC") (an **ALL MALE** facility) on February 23, 2004 after being assigned to the Virginia Department of Corrections. Upon arrival, Myers was evaluated by DFCC Head Nurse Darlene Speltz at which time, Myers fully explained her medical and gender situation and questioned why she was being housed at an all male facility. Despite the concerns expressed by Myers concerning her medical and gender issues requiring a more private surround, Myers was assigned to 'A' Building – 100 pod (bed # 145). This unit consists of an 88-bed **ALL MALE** dormitory.

As a direct result of this assignment, Myers was forced to use the bathroom, change her colostomy bags, shower and change clothes in an open locker-room style bathroom with 87 other individuals of the **opposite** gender. After months of enduring this complete invasion of privacy, as well as being subjected to various degrees of sexual harassment and a complete disregard of Myers' situation by then-**warden David Everett**, Myers filed a written request form to the medical department asking to be moved into one of the approximate dozen single person cells she discovered existed on that institution. The basis for her request was her gender and her various medical conditions requiring more privacy than a dorm environment provides (especially given it is an **ALL MALE** dorm). That request went

unanswered so on July 2, 2004, Myers filed an emergency
grievance addressing the same issues. **Lt. Ridley** responded to
this grievance stating the complaint was "not subjecting you to
serious or irreparable harm" and therefore **refused** to address
the issue.    After several other complaints being filed,
officials finally moved Myers from the dorm to a single cell
(cell #703 - now referred to as cell #1303) on July 9, 2004;
however, that cell was **NOT** a handicapped accessible cell.    It
was discovered that there was only one handicapped accessible
cell in that building or the entire camp for that matter, and
that cell was occupied by an inmate by the name of Raymond
Russell, who did **NOT** require the use of a handicapped cell.
Despite this fact, DFCC officials insisted that Myers move into
and live in the non-handicapped accessible cell (#703).

Due to being forced to live in this non-handicapped accessible
cell, one in which Myers' wheelchair would not fit through the
door nor be used inside the cell, Myers was forced to crawl
around the cell on her hands and knees to get from the door to
her bed; as well as crawl on the floor to get around the cell
itself.    Also, Myers was force to use bathroom facilities (sink
and commode) that did not have railings installed and were NOT
handicapped accessible, making their use impossible without
great risk of injury to Myers.    In fact, as a direct result of
being forced to crawl around on the floor, Myers suffered
permanent physical damage to her left knee requiring various
medical treatments including surgery. (**NOTE**: the effects of
being forced to crawl around on the floor constantly caused a
hole to be rubbed into her left knee; which ultimately caused
extensive tissue damage requiring surgery whereby doctors had to
remove the remaining damaged tissue resulting in the plaintiff's
inability to straighten her left knee as well as now being
forced to endure great amounts of pain daily.)

Moreover, as a result of being forced to live in an non-
handicapped unit, Myers was also forced to use that building's
general shower stall which was located off the dayroom.    That
shower was **NOT** handicapped accessible therefore, there were **NO**
grab bars present to prevent possible injury, the door was not
big enough to allow Myers' wheelchair to access the shower
forcing her to crawl around to get in and out as well as to use
the shower itself.    In addition, the door to this shower had
large security holes in it which exposed Myers to a complete
lack of privacy and exposing her to numerous inmates and staff

of the <u>opposite gender</u> while in various states of undress  or
completely naked while using the shower.

While being forced to live in a non-handicapped accessible cell,
Myers filed multiple complaints to various officials of the
institution from Warden Everett on down asking to be moved into
the handicapped accessible cell due to "medical concerns about
me crawling on my hands and knees to get to my bed because my
wheelchair will not fit in the doorway of the cell I'm in …
[crawling around] causes me major pain, is not only humanly
degrading but is also physical and mental abuse.  There also no
handicapped rails to help me access the toilet." (August 26,
2004 Complaint)  In fact, the physical damages to Myers' knee
are documented in photos taken on September 9, 2004 as well as
her medical records.  Again, remember that the ONLY handicapped
accessible cell was being utilized by an inmate **not** requiring a
handicapped accessible cell, a fact pointed out to the
institutional officials repeatedly including then-warden
Everett.  Myers was forced to live under these conditions from
**July 9, 2004 until August 31, 2004** (or 53 days) when she was
finally moved into the sole handicapped accessible cell (cell
#709 – now cell #1309) and the previous occupant of that cell
(Raymond Russell) was moved into the non-handicapped cell Myers
had occupied.

While living in this handicapped accessible cell, Myers was
forced to endure many problems and hardships documented in
various complaint forms filed with officials.  These problems
include but are not limited to issues of going for 3+ weeks in
October 2005 with **NO** water working in the cell's sink and 7 days
of **NO** water at all (sink, toilet and shower) as documented in
emergency grievance # 56142) Myers cell was the ONLY cell in
this small building that was experiencing any problem of this
type.  This same problem occurred again on July 25, 2006 (as
documented in emergency grievance # 5658) as well as again in
January through March 2007 when Myers was forced to go <u>without</u>
<u>water</u> in the sink for **over two months**.  Water which was <u>required</u>
for Myers to properly care for her numerous medical conditions
including routine changes of her colostomy bags. Emergency
grievance # 57659 was filed on February 6, 2007 concerning the
latest of those issues to which **Lt. Ridley** again responded that
this issue was "not life threatening" despite the well
documented medical necessity for access to running water.  Myers
filed yet another complaint on February 22, 2007 concerning this

issue but that was not even responded to until March 6, 2007
when staff stated that maintenance "will come this week" thus
documenting a <u>complete</u> <u>disregard</u> on the part of prison officials
for Myers health and physical well being.  Myers points out that
again the entire time her cell was without water <u>all</u> of the
other cells in this small building never experienced any problem
with access to water.

During the same timeframe, Myers was subjected to repeated
sexual harassment by **Correctional Officer J. Sledge** as
documented in an Informal Complaint dated January 22, 2006.
Sgt. Lowe responded to that complaint on January 27, 2006
stating "the issue has been administratively dealt with and
solved" in that c/o Sledge was reassigned to a different part of
the institution.   Despite that claim, c/o Sledge was back to
harass Myers less than a week later, as documented in the
February 1, 2006 emergency grievance in which Capt. A. Morris
responded "this matter may be addressed through regular channels
as we discussed," thereby demonstrating yet again a *complete*
*disregard* for the safety and well being of Myers by prison
officials.

In August 2007, the institutionally provided wheelchair that
Myers was using became unusable due to the seat being broken
which forced Myers to sit on the bare metal crossbar when the
wheelchair was used.   After several complaints being filed on
this issues going unaddressed, on or about August 11, 2007, **Lt.**
**Goodfellow** was called down to 1300 pod to address the issue with
Myers.   After seeing the situation himself, **Lt. Goodfellow**
personally took Myers to the Assisted Living Pod (new 700 pod)
where he went into a supply closet, removed a wheelchair from
inside, gave it to Myers to use and place her broken one inside
the same closet.   While using this new wheelchair on August 13,
2007, Myers suffered a serious accident, due to the wheelchair
being defective in that the brakes did not work properly,
causing Myers great physical injury.   This incident occurred
behind G Bldg (1300 pod) at the "recreation area" (segregation
cages) which consists of a slight incline area.   While going
down hill toward cages, Myers lost control due to the
malfunction of the brake. (This is why this wheelchair had been
in the closet for repair in the first place it was later learned
from the institution's nursing staff. i.e. Nurse Vick) As a
result of losing control, the right side of wheelchair caught
the metal fence pole causing Myers to be thrown onto the cement

hard and causing the injuries.  Paramedics were called and Myers
was left on the ground (instead of being taken to the medical
unit on site) until the paramedics arrived who then transported
Myers to the hospital.  Myers injuries included her right femur
being broken in half causing a compound fracture with her bone
actually sticking through the skin and blue jeans worn at time
of accident and requiring hospitalization and surgery.

Upon returning to DFCC after her surgery, Myers attempted to
address the issue of the faulty wheelchair with staff by filing
a complaint form on September 11, 2007.  Medical staff J. Hill
responded to the complaint stating that "Mrs. Badget will
schedule a time to discuss this with you".  Myers grieved this
issue to the warden on October 4, 2007.  Warden Davis denied the
grievance on November 1, 2007 stating that "you have since been
issued a new wheelchair" and never responded to the fact a
defective wheelchair supplied by the institution caused the
incident and the injuries suffered.  A level II grievance was
filed on November 1 and denied by Fred Schelling on November 16,
2007.  What's more, to date, the Department has **_refused_** to
provide Myers with copies of the official Incident Report filed
as a result of this incident.

In addition, sometime during 2007 or 2008 (shortly after then
Officer K. Chalmers became **Investigator Sgt. K. Chalmers**)
Chalmers came down to Myers cell (#709) one morning early and
woke Myers up at which time, Chalmers came into Myers cell **ALONE**
with a notebook and camera and told her he was there to look at
any tattoos Myers had.  Chalmers then **ordered** Myers to disrobe
completely (despite the fact Myers is a female and Chalmers a
male) so that he could **see and photograph** all tattoos on her
body.  He then proceeded to take photographs; both close up and
full body shots, of her body including her chest and pelvic
regions.  There had been some history between Chalmers and Myers
as they were both from the same hometown and Chalmers knew Myers
from the street and appeared to have some type of personal
vendetta against Myers, which appeared to be at least a partial
motive for the treatment Myers received at the hands of
Investigator Chalmers.

By 2008, being the **_only_** female inmate in the state being forced
to live in an otherwise all male facility began to affect Myers
to the point of her contemplating suicide, as documented in Mr.
Holloran's mental heath notes from July 11, 2008.  However,

instead of addressing the root of the problem, **Mr. Holloran**
instead had Myers briefly transferred to Sussex I (yet another
**all male** institution) to be placed on strip down suicide watch
on the late evening of Friday, July 11 / early morning of
Saturday, July 12, 2008.  This action was signed off by Dave
Robinson, VDOC Regional Director, according to the metal health
medical records and the Sussex I medical intake health log
contained within Myers medical and institutional records.

That following Tuesday morning, July 15, 2008, Myers was
scheduled to appear in the Southampton Circuit Court on an
unrelated matter; however, due to the lateness of her transfer
that weekend, Deerfield Correctional was still under court order
to transport Myers to court.  So early that morning, officers
from Deerfield arrived at Sussex to transport Myers to court.
However, at the time of their departure from Sussex, these
transportation officers were instructed by Sussex officials to
**NOT** bring Myers back to Sussex because of her gender and that
Sussex was an **all male** facility.  Therefore, after concluding
the business with the circuit court, the Deerfield
transportation officers proceeded to bring Myers back to
Deerfield.  Once they arrived at the sally port of Deerfield,
the sally port officers would not let Myers return to the
institution because all the paperwork indicated she was now
housed at Sussex.  Consequently, Myers was forced to wait in the
transportation van **shackled and handcuffed** for **over 2 ½ hours**
while Warden Davis, Major Mayes, Assistant Warden Wright,
Psychologist Rogers, Holloran and Robinson all came to the sally
port and discussed Myers gender issue and housing her in an **all
male facility** in-depth.  Despite **ALL** the parties clearly having
first hand knowledge of Myers gender, they still decided to
continue to force Myers to be housed at Deerfield, which is
again an **all male facility**.

Upon Myers return to DFCC on July 15, 2008 and the issue of
Myer's gender having been raised by officials at Sussex I, she
was then physically examined by **Dr. Ajumbi ('Dr. A'), Nurse
Badget and Nurse White**.  Dr. A noted in his medical notes that
**"no penis visualized – impression abnormal genital anatomy -
plan nothing to do"**.  (**NOTE**: despite repeated discussions with
the DFCC medical staff about her gender; this was the **FIRST**
complete examination of the plaintiff's body in the **four plus
years** she was being housed on Deerfield.)

In August 2008, Myers again had to be transported to MCV hospital for surgery this time on her hernia. Upon her return to DFCC, she was initially placed in DFCC's infirmary until she was seen by the doctor. However, after being released by the doctor to return to her cell, the DFCC officials instead caused Myers to be housed in the punitive segregation cell of DFCC's infirmary without explanation. This went on for weeks, as documented in the various complaints filed by Myers. On August 14, 2008, Myers filed an informal complaint about being housed in the Infirmary. On August 17, Myers filed Emergency Grievance # 34979 asking why she was still being forced to remain in the infirmary. The only reply received was that this is "not an emergency issue". Again on August 18, Myers filed Emergency Grievance # 34970 asking medical why she was being held when the doctor had cleared her to return to her cell. Their response was that she was being "held in infirmary per security". The frustration of the situation continued to build causing Myers to write Emergency Grievance # 34973 on August 19 wherein she said "Get me out of the infirmary or I will commit suicide". Instead of addressing the root of the issue, Capt. Jones immediately ordered that Myers be removed from her wheelchair, "stripped down," forced to crawl around on her hands and knees again as well as given an institutional charge for "threatening bodily harm" to herself.

The medical officials insisted to Myers throughout this entire time that they were not holding her but that **Investigator Sgt. K. Chalmers** and **Lt. K.G. Walker** were responsible for her detention. This again caused Myers to write in emergency grievance # 34972 ""I'm about to snap". On August 21, 2008, **Lt. Walker** finally response to the August 14 complaint Myers filed about being held in medical against her will. In her response, Lt. Walker stated that "when bed space is available & the medical department releases you from the infirmary you will be placed in the area deemed appropriate by the medical department". Despite, **Lt. Walker's** comments about when "the medical department releases you from the infirmary" the medical department insisted they were **not** nor had they been holding her. This was again relied to Lt. Walker in the August 21 complaint which stated why is the infirmary still holding her when "Dr. M, Nurse Vick & Nurse Whitfield all say I don't belong here." This complaint was not responded to until September 3, 2008 when Nurse R. Conner stated "you were originally housed in special housing unit prior to your hospitalization - the consensus

between medical and security was that you would be moved to
general population and assigned a bed in the 800 pod". (**NOTE:**
This despite cell # 1309 – the private handicapped accessible
cell Myers previously occupied being empty and available for her
to move back into.)

Moreover, **Lt. Walker** told Myers personally when she was to be
moved to 800 pod (bed # 875) that she was placing her in this
pod "in sight of my office so that I can keep an eye on you".
However, being housed in 800 pod presented all of the same
issues Myers first experienced in 100 pod when she first arrived
at DFCC. (i.e. being forced to live in a 96-man dormitory style
building resulting in being forced to use the bathroom, change
her colostomy bags, shower and change clothes in an open locker-
room style bathroom with 95 other individuals of the **opposite**
gender.)   In March 2010, Assistant Warden Alderman personally
moved Myers from the very front of that dorm (bed #875) to the
very rear of the dorm (bed # 827) in some attempt to address
Myers' privacy issues.   However she was still in an all male
dorm!   Alderman then moved Myers back to the front of the pod
(bed #875) in June 2010 as a result of the Department of
Justice's investigatory inspection on June 14.

In addition to these issues, on or about July 1, 2009, **Major
Jerry Streat** became the Chief of Security at DFCC replacing
Major S.D. Mayes.   Shortly after his arrival, Major Streat
stopped Myers along the sidewalk one day, when she was pointed
out to the Major by other staff. (i.e. "there is the person we
were talking about")   Major Streat proceeded to tell Myers that
this was his camp now and that he would strip search everyone
regardless of their gender or medical condition despite past
custom and practice.   [**NOTE:** Up to that date, Myers had made
approximately 44 previous trips through the facility's sally
port (entering or exiting transportation runs) without being
subjected to being strip searched at all much less by members of
the **opposite** gender.   This all changed by order of Major
Streat.]   Major Streat's order was and is in fact a **direct
violation** of § 53.1-25.1 of the <u>Code</u> of <u>Virginia</u> which states
that "The Director **shall prescribe rules** for state correctional
facilities to ensure that, when physical contact is required
between an officer and an inmate and when the inmate is required
by circumstances to disrobe, **the officer shall be the same
gender as the inmate**."   At **NO** time have *any* of the strip
searches/body cavity searches that Major Streat ordered upon

15

Myers been performed by members of her own gender.  Every one of them was conducted by male officers (members of the **opposite gender**).

The first medical run after this statement and policy change enacted by Major Streat was made on or about **July 15, 2009**. Myers was subjected a **full strip search and body cavity search** conducted by officers of the **opposite gender**, correctional officer **John Doe #1** & **John Doe #2** in the sally port building. After the search, the officers stated they were also insisted that Myers must wear the standard "black box" and waist chains on any transportation run despite the fact that Myers is confined to a wheelchair as well as the fact that the chains themselves cause holes to develop in Myers' colostomy bags.  At that point, Myers refused to go on the transportation run due to medical reasons and returned to her building.

On **August 5, 2009**  Myers was sent on a medical run and was again subjected to a **full strip search and body cavity search** conducted by officers of the **opposite gender**, **John Doe #3** & **John Doe #4**.  This search was conducted in sally port building.  Upon returning to DFCC, Myers was again subjected to another **full strip search and body cavity search** conducted by officer **John Doe #3** & **John Doe #4** (again male officers) in sally port building.

On **August 5, 2009**, Myers filed an informal complaint asking to be seen by mental health services because of emotional damages suffered as a result of the strip search practices by members of the opposite gender enacted by Major Streat.  On August 10, 2009 **Mr. W. F. Robinson**, Psych. Assoc. Sr. responded to this informal complaint stating that "mental health services will provide you psychiatric and psychological support **for male identify needs**". (emphasis added)  It appeared Robinson was trying to make Myers issue a "gender identification issue" when it was and is **NOT**! Mr. Robinson also threatened to transfer Myers concerning requested mental health services.

On **August 18, 2009** there was yet another medical transportation run to MCV General Surgery in which Myers was again subjected to a **full strip search and body cavity search** conducted by officers of the opposite gender, **John Doe #5** & **John Doe #6** (male officers) in sally port building. Upon returning to DFCC, Myers was again subjected to another **full strip search and body cavity**

**search** conducted by officer **John Doe #5** & **John Doe #6** (again male officers) in sally port building.

On **September 1, 2009** Myers was taken on yet another medical transportation to MCV General Surgery and was again subjected to a **full strip search and body cavity search** conducted by officers of the opposite gender, **John Doe #7** & **John Doe #8** in the sally port building.    Upon returning to DFCC, Myers was again subjected to another **full strip search and body cavity search** conducted by officer **John Doe #7** & **John Doe #8** (again male officers) in sally port building.

On **September 9, 2009**, Myers filed a follow up complaint about the "threat to transfer her" contained within **Mr. Robinson's** August 10, 2009 response if she did not like his response to her previous request for mental health services.

On **September 11, 2009, Counselor C. Smith**, Assisted Living Counselor "refused" to process Myers request at her "annual review" for a transfer to a female facility -- instead Counselor Smith proceeded to write in the names of three other MALE ONLY facilities on Myers' Annual Review form -- Counselor Smith challenged Myers to provide a birth certificate to substantiate Myers' claim of being female and requesting transfer to female camp.    In response, Myers had a copy of her original birth certificate mailed to Counselor Smith within 30 days of that request through attorney Scott Crowley.    Upon receipt of the birth certificate, Counselor Smith was "<u>shocked</u>" for find that Myers was in fact telling her the truth.    However despite that fact, Counselor Smith still <u>**REFUSED**</u> to process Myers' requested transfer to a female facility and instead did absolutely <u>**NOTHING**</u> to resolve the issue of being forcibly housed in an <u>**ALL MALE FACILITY**</u>!

On **September 11, 2009, Mr. Robinson** responded to Myers' September 9 complaint stating his response was "no threat - just facts - gender identity issues are not treated at DFCC per se." Mr. Robinson <u>**never**</u> addressed the root issue of Myer's problems with being the ONLY female in the entire state of Virginia being forced to be housed in an <u>ALL MALE</u> facility.

On **October 13, 2009**, there is yet another medical transportation run to MCV General Surgery in which Myers was subjected to a **full strip search and body cavity search** conducted by officers

of the opposite gender, **John Doe #9** & **John Doe #10** in sally port building.  Myers initially refused this trip and went back to building at which time **Major Streat, Nurse Vick** and **Sgt. Jones** personally came to 800 pod and got Myers and physically took her to the sally port at which time **Major Streat** <u>ordered</u> **Sgt. Jones** (male officer) to conduct a **full strip search and body cavity search** of Myers and then take her to her medical appointment. Upon returning to DFCC, Myers was again subjected to another **full strip search and body cavity search** conducted by officer **John Doe #9** & **John Doe #10** (again male officers) in sally port building.

On **November 17, 2009**, Myers wrote a letter to Debra J. Prillman, Assistant U.S. Attorney - Richmond to request assistance in her current situation.  That letter was followed up with a November 25 letter to Congressman Bobby Scott in which Myers requested assistance in her current situation.  Congressman Scott wrote to **VDOC Director Gene Johnson** to ask that he investigate Myers situation.  Myers also wrote two letters to Governor Tim Kaine on December 4 & 7, 2009 requesting assistance.  Lastly, Myers wrote to the U.S. Department of Justice on **December 14, 2009** requesting their assistance.  As a result of that letter, the Department of Justice opened two separate investigations on this matter. (file # 204-79-296 (DRS) & 171-79-35 (COR))

On or about **May 1, 2010**, Myers had her first meeting and examination conducted by **Dr. Harvard Stephens**, VDOC Chief Physician.  The exam was conducted in the trauma room of the medical department at Deerfield.  This was a **complete** exam including vaginal area and was attended by Dr. Stephens and Nurse Badget, along with the medical Correctional Officer Eason (male officer).  Later that same day **Dr. Stephens** calls Myers back over for a second exam because **Dr. Stephens** seemed to still be in **'shock'** from the first exam to not find a penis but rather a vagina.

On **May 9, 2010** Myers was again subjected to a **full strip search and body cavity search** conducted by officers of the opposite gender, **John Doe #11** & **John Doe #12**.  This search was conducted in the inmate shakedown room off of the visitation area at the conclusion of Myer's Mother's Day visit with her mother.

On or about **May 11, 2010**, Myers has a formal sit-down interview in DFCC's visiting room with <u>Richmond-Times</u> reporter Frank Green

about her situation of being forced to live in an all male
facility and the various other issues she has had to endure at
the hands of the institutional staff.

On **May 12, 2010** Myers received a certified letter from the
Department of Justice about her December 14, 2009 complaint
stating that a joint investigation by Coordination and Review
Section and Disabilities Rights Section of the DOJ had been
initiated. (Complaint # 204-79-296 (DRS) & 171-79-35 (COR))

On **May 23, 2010**, the newspaper article about Myers' situation
appears in the <u>Richmond Times</u> newspaper. This article was
quickly circulated around the institution by both staff and
inmates thus putting **ALL staff** on notice of Myers gender
situation. Frank Green also interviewed and questioned various
officials at Deerfield and the Director of the Department of
Corrections' office about Myers issues.

On **May 28, 2010** Myers wrote a letter to **Mr. Gary Bass**, Chief of
Operations for the Department of Corrections asking for transfer
to a female facility since Counselor Smith refused to properly
process Myers request to her that past September.

On **June 1, 2010**, Myers filed an informal complaint to **Warden
Keith Davis** concerning her continued forced housing in an <u>ALL
MALE</u> facility. In this complaint, Myers clearly stated "I want
to make it clear to you (as well as all the parties who is
reading a copy of this (Informal complaint) I am not a
(Hermaphrodite or Transsexual) **I AM A FEMALE**. My birth
certificate states my gender as female ... I (do not) belong in
all male prison." Copies of this complaint were also sent to
the ACLU, the Justice Department and the <u>Richmond Times</u>.

On **June 3, 2010**, Myers meets with and is examined again by **Dr.
Harvard Stephens** in the medical department at Deerfield. This
is the second meeting and third physical exam conducted of Myers
by Dr. Stephens. (examine consisted of Myers getting completely
naked for Dr. Stephens and exam was performed in the x-ray
room.)

On **June 4, 2010**, **Mr. Gary Bass**, Chief of Operations for
Department of Corrections wrote a letter to Myers responding to
her May 28, 2010 asking for transfer to female facility. In his
letter, Mr. Bass stated "The matter you discuss is a **medical**

issue. Your case is currently **under review**. Once a final decision is made you will be notified." Myers ponders how her transfer to a female institution to be house with other females like herself can possibly be a "medical issue". **ALL legal identification documentation**, i.e. Virginia issued birth certificate; Virginia issued DMV Operator's license; as well as all Social Security records clearly indicate that Myers legal gender is and always has been **female**. That does **NOT** make her transfer issue a "medical issue"!

On **June 7, 2010, Dr. Stephens** wrote a letter to Myers as a follow up to the June 3 meeting and examination. In this letter, Dr. Stephens stated "As I stated during our conversation, a committee will be meeting soon to address your complaints. After the meeting, you will be informed of our assessment."

On **June 8, 2010, Counselor C. Smith** responded to the June 1 complaint that Myers filed with Warden Davis. In this response, Counselor Smith merely stated "at the time of sentencing you were assigned to a male facility" with **NO** other explanation or justification of the continued forced housing of a female inmate in an ALL MALE facility.

On **June 10, 2010**, Myers filed a Level I Grievance on the June 8th response to her June 1 Complaint. In the grievance Myers stated that "Warden (**Mr. K. Davis**) as well as the treatment supervisor are aware that my birth certificate states my gender as female but yet are still illegally housing me in an all male facility."

On or about **June 13, 2010** Myers was again subjected to a **full strip search and body cavity search** conducted by officers of the opposite gender, **John Doe #13 & John Doe #14**. This search was conducted in the inmate shakedown room off of the visitation area at the conclusion of Myer's visit with her brother.

On **June 14 & 15, 2010**, several meetings were held at Deerfield Correctional Center with three members of the Department of Justice including **Regina Morgan**, Investigator; **Toni Pochucha**, Investigator - U.S. DOJ Disability Rights Section; **Betsy Keenan**, U.S. DOJ Coordinator and Review Section as part of the DOJ's investigation into Myer's complaint. In addition to these three individuals meeting with Myers, they also met with many DOC and

DFCC officials including but not limited to **Mr. Gene Johnson**, Director; **Mr. John Jabe**, Deputy Director-VDOC; **Mr. Gary Bass**, Chief of Operations-VDOC; **Mr. David Robinson**, Eastern Regional Director-VDOC; **Dr. Harvard Stephens**, DOC chief physician; **Mr. Keith Davis**, Warden-DFCC; **Mr. Clyde Alderman**, Assistant Warden-DFCC; **Ms. T. Porrovecchio**, Operations Officer-DFCC; **Ms. B. Grant**, Treatment Program Supervisor (TPS)- DFCC; **Ms. C. Smith**, Counselor-DFCC; **Mr. W. Robison**, Psychology Associate Sr.-DFCC; among others.

On **June 14, 2010** Myers filed an informal complaint to medical about not getting female hormone treatments to correct physical damage done to her body as a result of years of being forced to take male testosterone shots by the Department of Corrections.

On or about **June 16, 2010** Assistant Warden **Clyde Alderman** moved Myers from the rear of the dorm (bed # 827) where he had personally moved Myers to back to the front of the same dorm (bed #875) pursuant to the DOJ's visit. This move did **nothing** to provide the necessary privacy Myers needed and in fact made it worst!

On **June 25, 2010**, **Nurse Conner** answered Myers' June 14 complaint stating "your request is under review and a decision is pending". Despite this response, to date, Myers has **NOT** received any answer on this issue.

On **July 1, 2010**, Assistant Warden **Clyde Alderman** responded to the June 10 Level I Grievance. In recapping the claim, Alderman stated "you stated that your birth certificate states that your gender is female but you are still housed at a male facility". Alderman's response to the claim was "Your concerns were addressed by Counselor Smith on 6/8/10 'At the time of your sentence, you were assigned to a male facility'". Alderman then proceeded to claim that since Myers has been continuous housed at Deerfield since 2003, "your time for filing this grievance has expired."

On **July 2, 2010**, Myers filed a Level II grievance with **Regional Director David Robinson** stating the claim Assistant Warden Alderman responded to in his July 1 response was not time barred because it was an ongoing issue.

On **July 13, 2010, Mr. Gary Bass,** Chief of Operation for VA. Department of Corrections responded to the Level II grievance. In his response, Mr. Bass stated "I have researched your case … The **chief physician** of the Department has examined you and **recommended that you remain at Deerfield."** He goes on to state "Based on my review of your case, I feel your current assignment **to DFCC is the most appropriate place for you.** As you are aware, this matter is under review by the U.S. Dept. of Justice. If further developments occur we will reevaluate your status."

On **July 17, 2010** Myers then filed a Level III grievance with Director Gene Johnson's office. On **August 4, 2010,** that grievance was responded to by G. Robinson, Manager Ombudsman Services Unit who stated that a level III grievance was "unavailable … therefore **you have exhausted all of your administrative remedies.** I am returning your grievance to you for your record."

On **August 16, 2010** Myers wrote a letter to **Dr. Stephens** as a follow up to their July meeting and Dr. Stephen's previous statement that they would meet again in July.

On **August 17, 2010** medical personal at Deerfield draw blood from Myers for testing of her hormone levels.

On **August 20, 2010,** the results from the August 17 blood work revealed Myers' hormone levels **clearly reflect that of a biological female.** (Folliculan Stimulating Hormone or "FSH" level of 48.2 and Luteinizing Hormone or "LH" level of 22.2 – both readings listed as "high". Also Myers' testosterone levels registered as 22 for Serum Testosterone and <0.2 for Free Testosterone – both readings listed as "low".) **Nurse Conner** stated to Myers that she had already sent the results to Dr. Stephens and Dr. Downes, a hormonal specialist at MCV Hospital.

On **August 26, 2010,** Dr. Stephens wrote to Myers in response to her August 16 letter. **Dr. Stephens** stated that he "will arrange to see you during the month of September."

On **October 4, 2010,** Myers again undergoes her "annual review" with **Counselor Smith.** As part of the standard annual review process, Myers was asked if she was requesting a transfer to which Myers again put in for transfer to either Fluvanna or Goochland (both female facilities). **Counselor Smith** again

**refused** to submit such request and after Myers complained did she then tried to call Ms. Porrovecchio (Operations Officer), Mr. Davis (warden) and Ms. Grant (TPS) but they all in a meeting so Counselor Smith said she would get back with Myers later on transfer request.

Later that same day (Oct 4) as a follow up to her meeting with Counselor Smith, Myers filed an informal complaint about being denied transfer to female institution at her annual review yet again.

On **October 5, 2010**, **Counselor Smith** called Myers back into her office and <u>denied</u> Myers' request for a transfer to Fluvanna or Goochland.

On **October 12, 2010**, **Ms. B.M. Grant**, DFCC Treatment Program Supervisor (TPS) denied Myers' October 4th complaint stating "you are **not eligible** to transfer to a **female institution**. You **can request** a transfer to a **male institution**." (emphasis added)

On **October 13, 2010** Myers was taken on yet another medical transportation (this time to T.J. Powell in Richmond for shoe fitting) and was again subjected to a **full strip search and body cavity search** conducted by officers of the **opposite gender**, sally port officer c/o **Beale** & transportation officers c/o **Peoples & Lowery** in the sally port building. Also present but outside in the van was c/o Young (a <u>female</u> office) and Lt. Artist (male officer). Thus, a female officer was available to have conducted Myers strip search however, institutional officials continued to violate Myer's person be subjecting her to strip searches and body cavity searches by officers of the **OPPOSITE** gender! What's more, while Myers was at T.J. Powell, she had to use the bathroom. Instead of utilizing the female officer that was present, **Lt. Artist** himself took Myers to the bathroom and **made her strip her clothes off from the waist down** as well as change her Depends in front of him. Upon returning to DFCC, Myers was again subjected to another **full strip search and body cavity search** conducted by sally port officer c/o **Beale** & transportation officers c/o **Peoples & Lurry** (again male officers) in sally port building.

On **October 19, 2010**, Myers filed a grievance on the October 12 response by Ms. Grant that "you are not eligible to transfer to

a female institution.    You can request a transfer to a male institution."

On **October 20, 2010**, **Ms. A. Burnett**, DFCC Grievance Coordinator refused to process October 19th grievance citing it was "repetitive" claiming grievance # 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 addressed dame issue (7/1/10 grievance).

To recap, as a direct result of the conduct, actions, and/or inactions of the defendants, individually and/or collectively, the plaintiff has been subjected to:

- Being <u>forced</u> to live in an **ALL MALE** institution for almost **3,000 days and counting**, causing the plaintiff to be subjected to numerous violations of her privacy as well as the subject of **sexual harassment by at least one male staff member**;

- Being forced to live in a **non-handicapped accessible cell** for **53 days** thereby <u>forcing</u> the plaintiff to inhumanly have to crawl around on her hands and knees to get into and around her cell as well as being <u>forced</u> to use a **non-handicapped accessible shower** in the common dayroom area exposing her in various states of undress as well as showering to various male inmates and staff thereby causing physical, mental and emotional damages upon her person;

- Being subjected to being housed without access to running water in her cell multiple times, as documented, in what can only be believed to be retribution for the plaintiff exercising her rights to grieve her situation;

- **Permanent physical injuries** suffered as a result of the forced housing in a non-handicapped cell;

- **Permanent physical injuries** suffered as a result of the defective institutionally provide wheelchair which caused the plaintiff to be thrown onto the cement breaking her femur in half requiring hospitalization and surgery;

- At least **thirteen (13) strip searches and body cavity searches** performed upon the plaintiff by and in the presence of officers of the **OPPOSITE GENDER**. (i.e. male officers)    In addition, at least one of these searches was not only conducted by and in the presence of officers of the **OPPOSITE GENDER**, it was also conducted in front of inmates of the **OPPOSITE GENDER**. (i.e. male inmates)

-  Being **ORDERED** by a <u>male officer</u> who came into Myers cell **ALONE** to disrobe completely and be subjected to photographs being taken of her naked body by said officer.

**NOTE**: several of the John Does listed above have been identified as to who they were but not as to which date they were involved in as DOC to date has refused to provide the documentation to identify who was on duty at which time.  Therefore the number of John Does listed in the statement of claims does not match the number of John Does listed as defendants.  Those identified have been named by their name as defendants.

**As a result of the facts cited above, this action is filed, seeking among other things, damages for violation of Myers' rights under the Fourth, Eighth, and Fourteenth Amendments and associated state law claims as well as for violation of her rights under the Americans with Disabilities Act of 1990 (ADA) 42 U.S.C. §12101 *et seq.*; and the Civil Rights Act of 1871 - 42 U.S.C. § 1981 *et seq.* including but not limited to §§ 1983, 1985, and 1986.**

**I.  One or more of the defendants, individually and/or collectively violated the Plaintiff's Eighth Amendment protection against cruel and unusual punishment by subjecting the plaintiff to undergo at least thirteen (13) separate full strip searches & body cavity searches performed by and in front of officers of the opposite gender.**

**II. One or more of the defendants, individually and/or collectively violated the Plaintiff's Eighth Amendment protection against cruel and unusual punishment by subjecting the plaintiff to undergo one strip search & body cavity search performed not only by and in front of officers of the opposite gender but also in front of other inmates of the opposite gender.**

**III. One or more of the defendants, individually and/or collectively violated the Plaintiff's Fourth Amendment protection against unreasonable search as well as the plaintiff's right to Privacy by subjecting the plaintiff to undergo at least thirteen (13) separate strip searches & body cavity searches performed by and in front of officers of the opposite gender.**

IV. One or more of the defendants, individually and/or collectively violated the Plaintiff's Fourth Amendment protection against unreasonable search and right to Privacy by subjecting the plaintiff to undergo one strip search & body cavity search performed not only by and in front of officers of the opposite gender but also in front of other inmates of the opposite gender.

V. Defendant Chalmers violated the Plaintiff's Eighth Amendment protection against cruel and unusual punishment as well as her Fourth amendment right to Privacy by subjecting the plaintiff to be forced to strip in his presence in her cell ALONE as well as be subjected to his taking numerous photographs of her naked body.

VI. One or more of the defendants, individually and/or collectively violated the Plaintiff's Eighth Amendment protection against cruel and unusual punishment by subjecting the plaintiff to reside in a dorm style facility housing between 87-96 members of the opposite gender while there are no other individuals of the plaintiff's gender in the same dorm or for that matter at the same institution.

VII. One or more of the defendants, individually and/or collectively violated the Plaintiff's Eighth Amendment protection against cruel and unusual punishment by subjecting the plaintiff to be forced to only use common (locker-room style) shower and commode facilities where NO privacy is afforded and ALL other individuals living in the dorm and using these facilities are of the opposite gender.

VIII. One or more of the defendants, individually and/or collectively violated the Plaintiff's Fourth amendment right to Privacy by subjecting the plaintiff to be forced to only use common (locker-room style) shower and commode facilities where no privacy is afforded and ALL other individuals living in the dorm and using these facilities are of the opposite gender.

IX. One or more of the defendants, individually and/or collectively violated the Plaintiff's Fourteenth Amendment right to equal protection as well as the right to Due Process in that the plaintiff is the ONLY female being forced to be housed in an all male facility.

X.   One  or  more  of  the  defendants,  individually  and/or
collectively violated the Plaintiff's Fourteenth Amendment right
to  Due  Process  in  that  the  defendant's  overtly  refused  to
process the plaintiff's repeated requests to be transferred to a
facility  consisting  of  individuals  of  the  same  gender  as  the
plaintiff. (i.e. female institution)

XI.  The  defendants  have  acted  in  a  conspiracy  to  continue
depriving the plaintiff her rights under the Fourth, Eighth, and
Fourteenth Amendments as well as various state laws, by allowing
the  conditions  to  continue,  for  her  person  to  be  violated  and
for  their  repeatedly  refusing  to  process  the  plaintiff's
transfer request to be housed in a female facility instead of
being the only female housed in an all male facility.

XII. One  or  more  of  the  defendants,  individually  and/or
collectively violated the Plaintiff's rights under the Americans
with Disabilities Act of 1990 (ADA) 42 U.S.C. §12101 et seq. by
forcing her to live in a non-handicapped accessible cell for the
period of 53 days causing serious physical, emotional as well as
mental damages.

XIII.    One or more of the defendants, individually and/or
collectively violated the Plaintiff's rights under the Americans
with Disabilities Act of 1990 (ADA) 42 U.S.C. §12101 et seq. by
providing her with a wheelchair that was known to be defected
and whose use caused the plaintiff to suffer serious physical
and permanent injury to her body.

## V.    RELIEF

I understand that in a section 1983 action the Court cannot change my sentence, release me from custody or restore good time. I understand I should file a petition for a writ of habeas corpus if I desire this type of relief. _DM_ [please initial]

The plaintiff wants the Court to: [check those remedies you seek]

X  award money damages in the amount of $ 25,000,000.00 for but not limited to actual, physical, emotional, nominal and compensatory damages as well as punitive damages.

X  grant injunctive relief by ordering the Virginia Department of Corrections to amend all of Myers records to reflect her true and legal gender as "female" and to immediately transfer her from this all male facility to a female facility as well as the entry of an Order forever banning the Department's practice of strip searching, body cavity searching and/or any other searches involving physical contact with or the disrobing of an inmate that is conducted by officers of the OPPOSITE GENDER. Also requesting a temporary injunction / restraining order barring the Defendants and all those under their supervision from conducting any type of strip searches/body cavity searches or any other search involving physical contact by or in the presence of members of the opposite gender (i.e. male).

X  other all cost associated with this action, attorney fees as well as any other relief the court deems just and proper

## VI.    PLACE OR INCARCERATION

Please list the institution at which you were incarcerated during the last six months. If you were transferred during this period, list the date (s) of transfer. Provide an address for each institution.
Deerfield Correctional Center, 21360 Deerfield Drive, Capron, VA. 23829

## VII.   CONSENT

CONSENT TO TRIAL BY A MAGISTRATE JUDGE: The parties are advised of their right, pursuant to 28 U.S.C. § 636 (c), to have a U.S. Magistrate Judge preside over a trial, with appeal to the U.S. Court of Appeals for the Fourth Circuit.

Do you consent to proceed before a U.S. Magistrate Judge?
Yes [    ] No [X]. You may consent at any time; however, any early consent in encouraged.

## VIII.   JURY DEMAND

Pursuant to the rights spelled out within the Seventh Amendment to the United States Constitution, Rule 38 of the *Federal Rules of Civil Procedure,* as well as Local Rule 38 of the Rules of the United States District Court for the Eastern District of Virginia, plaintiff hereby demands a jury trial in this matter and hereby puts all parties on notice of this demand.

## IX.   SIGNATURE

If there is more than one plaintiff, each plaintiff must sign for himself of herself.

Signed this 23rd  day of November, 2010

Plaintiff